LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAHARI MCCRAE, *on behalf of herself,*<br>*FLSA Collective Plaintiffs, and the Class*,<br><br>Plaintiff,<br><br>v.<br><br>OAK STREET HEALTH, INC. and<br>OAK STREET HEALTH MSO, LLC,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION**<br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, TAHARI MCCRAE ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendant OAK STREET HEALTH, INC. and Defendant OAK STREET HEALTH MSO, LLC (collectively "Defendants"), and states as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving, (2) liquidated damages and (3) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including

overtime, due to time-shaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.    Defendant OAK STREET HEALTH, INC., with and through its subsidiaries (such as OAK STREET HEALTH MSO, LLC), operates primary care centers within the United States serving approximately 206 care centers across 25 States. Specifically, Defendants operate (i) 18 facilities in New York, (ii) 15 facilities in Pennsylvania, (iii) 4 facilities in Rhode Island, (iv) 2 facilities in Virginia, (v) 11 facilities in Ohio, (vi) 11 facilities in North Carolina, (vii) 13 facilities in Michigan, (viii) 13 facilities in Indiana, (ix) 5 facilities in Tennessee, (x) 3 facilities in Kentucky, (xi) 8 facilities in Georgia, (xii) 3 facilities in South Carolina, (xiii) 30 facilities in Illinois, (xiv) 3 facilities in Alabama, (xv) 2 facilities in Iowa, (xvi) 6 facilities in Missouri, (xvii) 2 facilities in Mississippi, (xviii) 2 facilities in Arkansas, (xix) 1 facility in Kansas, (xx) 6 facilities in Louisiana, (xxi) 5 facilities in Oklahoma, (xii) 21 facilities in Texas, (xiii) 5 facilities in Colorado, (xiv) 4 facilities in New Mexico, (xv) 13 facilities in Arizona (collectively the "Facilities"). *See* **Exhibit A**, List of Defendants' facilities by State.

4.    Plaintiff brings claims on behalf of potential class members, who were all non-exempt nurse's aides, medical assistants, and other similar positions employed by Defendants and underpaid due to the same common policy.  Defendants would impermissibly reduce employees' compensable time from their actual hours worked to eight (8) hours of compensable time per shift. Plaintiff brings this wage and hour class action on behalf of herself and all persons, who during the applicable limitations period up to and including the present, were similarly underpaid by Defendants in violation of protections afforded under the FLSA, parties' agreements, and the laws and regulations passed in the following states:

1) Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;
2) Arkansas: Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;
3) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.,* and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;
4) Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 *et seq.*;
5) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;
6) Indiana: Indiana Wages Hours and Benefits, Ind. Code §22-2-2 *et seq.* Indiana Frequency of Wage Payments Ind. Code §22-2-5 *et seq.*;
7) Iowa: Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;
8) Kansas: Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;
9) Kentucky: Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;
10) Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;
11) Maine: Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;
12) Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;
13) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;
14) New Mexico: New Mexico Minimum Wage Law, N.M. Stat. Ann. §50-4 *et seq.*;
15) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;
16) North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;
17) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;
18) Oklahoma: Oklahoma General Wage Law, O.S. §§40-165.1. *et seq.*;
19) Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;
20) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;
21) Rhode Island: Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, et seq., and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, et seq.;
22) South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;
23) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*; and
24) Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

5.    Plaintiff further alleges individual claims for violation under the Family Medical Leave Act, 29 U.S.C. § 2615 *et seq.*, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, due to Defendants' rejection of Plaintiff's request for leave due to her pregnancy and Defendants' subsequent discrimination/retaliation against Plaintiff due to her status as a pregnant

woman. Due to this conduct, Plaintiff is entitled to recover from Defendants: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over the state law claims of Plaintiff and members of the Class pursuant to 28 U.S.C. §1367.

7.  Further, as the amount in controversy is over $75,000 and both Defendants are foreign to New York, Plaintiff brings this claim pursuant to diversity jurisdiction. Defendant OAK STREET HEALTH, INC. is incorporated in Delaware and Defendant OAK STREET HEALTH MSO, LLC is incorporated in Illinois. Both Defendants share a principal place of business located at 30 W. Monroe Street Suite 1200, Chicago, Illinois.

8.  Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

9.  Plaintiff is a resident of Kings County, New York.

10. Defendant OAK STREET HEALTH, INC. is a foreign business corporation organized under the laws of the State of Delaware, with a principal place of business located at 30 W. Monroe Street Suite 1200, Chicago, Illinois and an address for service of process located at c/o the Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

11. Defendant OAK STREET HEALTH MSO, LLC, is a foreign limited liability company organized under the laws of the State of Illinois, with a principal place of business located at 30 W. Monroe Street Suite 1200, Chicago, Illinois, and an address for service of process located at c/o C T Corporation System, 28 Liberty Street, New York, NY, United States, 10005.

12.     The Facilities are engaged in related activities, share common ownership, and have

a common business purpose:

     a.   Defendant OAK STREET HEALTH, INC. operates the Facilities through their direct and indirect subsidiaries, primarily, their wholly owned subsidiary Defendant OAK STREET HEALTH MSO, LLC.  As stated in Defendant OAK STREET HEALTH, INC.'s February 28, 2023 SEC filing, "OSH MSO [Defendant OAK STREET HEALTH MSO, LLC] operates as a management services organization and is in the business of providing management and other administrative services to our affiliated physician practice organizations under long-term management and/or administrative services agreements ('MSAs')." The SEC filing goes on to state that Defendant OAK STREET HEALTH, INC. "has the ability, through the MSA, to direct the activities (excluding clinical decisions) that most significantly affect the PC's economic performance. Therefore, all PCs are consolidated in the accompanying financial statements."

     b.   Defendant OAK STREET HEALTH, INC. states within the February 28, 2023, filing that it provides administrative services, which would include management of the Plaintiff, FLSA Collective Plaintiffs, and Class members in this case, pursuant to its MSAs.

     c.   Defendants share operational control of the Facilities through a single executive team with headquarters located at 30 W. Monroe Street Suite 1200, Chicago, Illinois.

     d.   The Facilities are advertised on Defendants' joint company website: https://www.oakstreethealth.com/careers. The Facilities share the same marketing pages set up by both Defendants. *See* https://www.youtube.com/oakstreethealth; https://www.instagram.com/oakstreethealth/;   https://twitter.com/oakstreethealth https://www.linkedin.com/company/oak-street-health/;      https://www.facebook .com/OakStreetHealth.

     e.   Employees are interchangeable among the Facilities—Defendants frequently transfer their employees to work at any Facility on an as needed basis, including Plaintiff, who was sent to Facilities in Canarsie, Bushwick, and Flatbush to fill in as needed.

     f.   All Facilities share a common career page through the company website where potential employees apply to a common human resources department.

     g.   All Facilities have common employee benefits set by Defendants.

     h.   The Facilities share a common payroll and centralized system of labor relations for employees as seen by Plaintiff's ability to work for multiple Facilities

throughout New York City while still being subject to the same managers and payroll.

13.     At all relevant times, Defendants were and are "enterprise[s] engaged in commerce" within the meaning of the FLSA, NYLL and regulations thereunder.

14.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

15.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt nurse's aides, medical assistants, and other similar positions, employed by Defendants anywhere across the United States on or after the date that is three (3) years before the filing of the Complaint in this case ("FLSA Collective Plaintiffs").

17.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules—all of which have culminated in a willful failure and refusal by Defedants to pay Plaintiff and FLSA Collective Plaintiffs their proper compensation for all hours worked, including overtime, but for which they have not yet compensated due to Defendants' time-shaving practices. The claims of Plaintiff as stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

18.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

19.      Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all current and former non-exempt nurse's aides, medical assistants, and other similar positions, employed by Defendants anywhere across the United States, on or after the date that is six (6) years, or the relevant statutory period of each State as applicable by law, before the filing of the Complaint in this case (the "Class").

20.     To the extent necessary, Plaintiff will designate subclasses as to each proposed Class for the States where Defendants have employees.

21.     At all relevant times, Plaintiff and Class members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure to pay all wages owed due to a policy of time shaving.

22.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the titles of the positions held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible

under FRCP 23.

23.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. Moreover, each potential State subclass includes over forty (40) members as well.

24.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All of the Class members were subject to the same corporate practices of Defendants, as alleged herein, including but not limited to Defendants' failing to pay regular and overtime compensation for all hours worked due to a practice of time-shaving in violation of the state wage law. Additionally, all of the New York Class members were subject to the same corporate practices of Defendants, as alleged herein, including but not limited to Defendants: (i) failing to provide Class members with proper wage statements in compliance with the NYLL and (ii) failing to properly provide wage and hour notices to Class members upon hiring and as required thereafter, pursuant to the NYLL.

25.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures carried out by Defendants.

26.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent in both class action litigation and employment litigation and have previously represented plaintiff in wage and hour cases.

27.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.    Defendants and other employers throughout the country violate state wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

Both current and former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)    Whether Defendants employed Plaintiff and the Class members within the meaning of state wage laws;

b)    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class;

c)    At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work;

d)    Whether Defendants practiced a policy of time-shaving;

e)    Whether Defendants compensated employees for all wages earned and all hours worked;

f)    Whether Defendants provided to Plaintiff and New York Class members proper wage and hour notice, on the date of hiring and annually thereafter, to all non-exempt employees, per the requirements of the NYLL; and

g)    Whether Defendants provided to Plaintiff and New York Class members proper wage statements with each payment of wages, as required by the NYLL and California Law.

**STATEMENT OF FACTS**

***Plaintiff's, FLSA Collective Plaintiffs', and Class Members' Wage Claims:***

30.    In or around February 20, 2023, Plaintiff was hired by Defendants, to work as a medical assistant primarily at the Facility located at 455 Sutter Avenue, Brooklyn, NY 11212 but,

as stated above, Plaintiff would fill-in at other locations as needed. Plaintiff's employment with Defendants terminated in or around November 2023.

31.    Throughout her employment, Plaintiff was scheduled to work five (5) days a week, Monday through Friday, nine (9) hours per day, from 8:00 am to 5:00 pm, for a total of forty-five (45) hours per week.  Similarly, FLSA Collective Plaintiffs and Class members had similar work schedules.

32.    In addition to working her schedule, throughout his employment, Plaintiff worked an additional four-and-one-half (4.5) hours beyond that scheduled time each week, which were uncompensated despite working forty-nine-and-one-half (49.5) hours per week, Plaintiff's compensable time would be reduced due to Defendants' policy of limiting Plaintiff's compensation to eight (8) hours per shift.  As Plaintiff worked five (5) shifts a week, her compensable weekly time was typically reduced from forty-nine-and-one-half (49.5) hours to forty (40) hours.

33.    Similarly, FLSA Collective Plaintiffs and Class members worked hours beyond their schedules and beyond eight (8) per day, but would be compensated on a per-shift basis of eight (8) hours.

34.    Plaintiff, FLSA Collective Plaintiffs, and Class members used the same application, located on their phones, to clock-in-and-out and track employee work time.  Plaintiff's, FLSA Collective Plaintiffs', and Class members' clock-in times would be evaluated by a common payroll department, which instituted the same common policies and timeshaving practices across Defendants' enterprise.

35.    During Plaintiff's employment, Plaintiff's managers and those overseeing payroll included personnel, who worked out of Defendants' Illinois headquarters, and who maintained

managerial control of Plaintiff and Class members regardless of the Facility they serviced on any particular day.

36.    Defendants knowingly and willingly failed to pay Plaintiff, FLSA Collective Plaintiffs, and the Class regular and overtime wages for all hours worked due Defendants' time-shaving practices.  Defendants knowingly and willingly failed to pay Plaintiff and the Class members premium payments demanded by state wage laws.

37.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under the NYLL.

38.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to employees, at the beginning of employment and at dates of all wage changes thereafter, pursuant to the requirements of the NYLL.

### *Plaintiff's and New York Class Members' WTPA Claims:*

39.    Plaintiff and New York Class members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

40.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and New York Class members at the beginning of their employment with Defendants.

41.    Defendants further violated the WTPA by failing to provide Plaintiff and New York Class members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp*., 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by

tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

42.      In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

43.      Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and New York Class members. Defendants' conduct actually harmed Plaintiff and New York Class members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing,

and necessitated the current litigation to vindicate Plaintiff's and New York Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

44.    Had the wage statements Defendants provided to Plaintiff and New York Class members accurately listed the total number of hours Plaintiff and New York Class members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and New York Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

45.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and New York Class members. This delayed payment caused Plaintiff and New York Class members to struggle to pay bills and other debts.

46.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

47.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct.,

14

Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

48.    The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

49.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200*

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

*W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

50.      Here, it is clear that Defendants' failure to provide Plaintiff and New York Class members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and New York Class members. That, in turn, would have increased Plaintiff's and New York Class members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

51.      Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs'

entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

52.     The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and New York Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

53.     Whether or not any New York Class members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

54.     The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these

claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Calderon,* 999 F.2d 1101 at 1106.

55.     Here, the problem is not merely challenging but insurmountable. Plaintiff and New York Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and New York Class members. The problem, rather, is that Plaintiff and New York Class members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent her W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

### ***Plaintiff's Individual Claims:***

56.     In or around late October or early November 2023, Plaintiff contacted and informed her manager that she was pregnant, and due to pregnancy issues, she would need two weeks off.

57.     A few days after she informed Defendants that she would need pregnancy related leave, Defendants terminated her employment without explanation or cause.

58.     Defendants discriminated against Plaintiff due to her pregnancy, retaliated against Plaintiff due to her pregnancy, and failed to inform and/or permit Plaintiff to exercise her rights under the Family Medical Leave Act to take leave to care for herself and her pregnancy.

59.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT
### ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

60.     Plaintiff realleges and reavers all the above allegations of this complaint as fully set forth herein.

61.      At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

62.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

63.     At all relevant times, Defendants had gross annual revenues in excess of $500,000.

64.     Defendants failed to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked due to time-shaving, including all hours worked in excess of forty (40) each week.

65.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs, and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

66.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

67.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

68.     Due to the intentional, willful, and unlawful acts of the Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime, plus an equal amount as liquidated damages.

69.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**VIOLATIONS OF THE NEW YORK LABOR LAW**
**ON BEHALF OF PLAINTIFF AND NEW YORK CLASS MEMBERS**

70.     Plaintiff realleges and reavers all the above allegations of this Class and Collective Action Complaint as if fully set forth herein.

71.     At all relevant times, Plaintiff and New York Class members were employed by the Defendants within the meaning of the NYLL §§ 2 and 651.

72.     Defendants willfully violated the rights of Plaintiff and New York Class members, by practicing a policy of time-shaving, in violation of the NYLL.

73.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and other non-exempt employees, as required by the NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with the NYLL.

74.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and other non-exempt employees with proper wage notices, at date of hiring and at dates of all wage changes thereafter, in violation of the NYLL.

75.     Due to the Defendants' NYLL violations, Plaintiff and New York Class members are entitled to recover from the Defendants their unpaid wages, including overtime, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS
### (brought on behalf of a Rule 23 Class)

76.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

77.     At all relevant times, Class members were employed by Defendants within the meaning of the applicable state wage and hour laws, just as Plaintiff was employed by Defendants under the meaning of the FLSA.

78.     Plaintiff can represent the Class because the requirements of the FLSA and the requirements of the state labor laws enumerated earlier are identical for purposes of his overtime class claims.

79.     Defendants knowingly and willfully violated Plaintiff and Class members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due a policy of underreporting employees' hours, in violation of the state wage and labor laws outlined above.

80.     Defendants knowingly and willfully failed to provide proper wage statements and notices to Class members, as required under the laws of New York State, California, and Minnesota.

81.     Due to Defendants' state law violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

82.     In addition to violations of State Labor overtime laws under which Plaintiff brings class (not individual) claims, Defendants violated State provisions requiring employers to pay employees all wages owed.   Since overtime wages are owed under the FLSA, these laws encompass class members' claims just as much as would explicit overtime requirements.   These state law provisions include the following:

> [e]ach employer in [Arizona] shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to his employees [and that] [e]ach employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employees up to such date . . . .[o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

Ariz. Rev. Stat. § 23-351(C); *see also Weeks v. Matrix Absence Mgmt.*, 2022 U.S. Dist. LEXIS 30849 (D. Ariz. 2022)

> Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.

Florida Minimum Wage Act, Fla. Stat. § 448.110(6)(c)(1)

> Damages recoverable by an employee. When it has been shown that an employer has intentionally failed to pay an employee wages or reimburse expenses pursuant to section 91A.3, whether as the result of a wage dispute or otherwise, the employer shall be liable to the employee for any wages or expenses that are so intentionally

failed to be paid or reimbursed, plus liquidated damages, court costs and any
attorney's fees incurred in recovering the unpaid wages and determined to have
been usual and necessary. In other instances the employer shall be liable only for
unpaid wages or expenses, court costs and usual and necessary attorney's fees
incurred in recovering the unpaid wages or expenses.

Iowa Wage Payment Collection Law, Chapter 91A.8; *see also Bouaphakeo v. Tyson Foods, Inc.*,
564 F. Supp. 2d 870, 883 (N.D. Iowa 2008) ("[T]he FLSA may be used to establish an employee's
right to a certain amount of wages under the IWPCL and an employer's violation of the IWPCL
for not paying all wages due its employees." (quotation omitted))

(a) Upon the discharge of any laborer or other employee of any kind whatever, it
shall be the duty of the person employing such laborer or other employee to pay the
amount then due under the terms of employment, whether the employment is by
the hour, day, week, or month, on or before the next regular payday or no later than
fifteen days following the date of discharge, whichever occurs first.
(b) Upon the resignation of any laborer or other employee of any kind whatever, it
shall be the duty of the person employing such laborer or other employee to pay the
amount then due under the terms of employment, whether the employment is by
the hour, day, week, or month, on or before the next regular payday for the pay
cycle during which the employee was working at the time of separation or no later
than fifteen days following the date of resignation, whichever occurs first.

Louisiana Wage Payment Act, La. R.S. § 23:631(A)(1)

An employee having a claim for wages which are not paid within thirty days of the
regular payday designated or agreed upon may institute suit for such unpaid wages
in the proper court. If an employee establishes a claim and secures judgment on the
claim, such employee shall be entitled to recover the full amount of the judgment
and all costs of such suit, including reasonable attorney's fees.

Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1231(1)

In case of any failure to pay wages due to an employee as required by Section 41-
10-40 or 41-10-50 the employee may recover in a civil action an amount equal to
three times the full amount of the unpaid wages, plus costs and reasonable
attorney's fees as the court may allow. Any civil action for the recovery of wages
must be commenced within three years after the wages become due.

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-80(C).

83.    The Florida Minimum Wage Act has a pre-suit notice requirement. Fla. Stat. §

448.110(6)(a).  However, Plaintiff invokes the Florida Minimum Wage Act not only in her

individual capacity but to bring class claims on behalf of class members residing in Florida. Thus,

Plaintiff is not personally required to provide Defendants with a pre-suit notice as to each class member.  As to these absent Florida class members, courts in Florida have "found no authority mandating that a detailed pre-suit notice for each and every putative class member be served on [d]efendants under § 448.110(6) prior to the filing of a putative class action under the FMWA." *Griffith v. Landry's, Inc*., 2016 U.S. Dist. LEXIS 196397, *12 (M.D. Fla. May 17, 2016).

84.     The Third Circuit Court of Appeals has clearly demonstrated the untenability of any such requirement:

> We raise the following questions to further demonstrate the error of the proposed framework adopted by our dissenting colleagues. If the dissent's "colorable legal claim" test is a threshold inquiry for commonality, why should the court not consider every potential disqualifier from one's having a "colorable legal claim?" For example, in any class certification case, should the court consider whether all potential class members complied with applicable pre-notice requirements under the relevant substantive law? Should the court consider whether every potential class member exhausted her administrative remedies under the relevant substantive law? Should the court evaluate whether each class member's claim complies with the applicable statute of limitations? The answers to these questions most certainly implicate whether a litigant, in a class action or otherwise, has a "colorable legal claim." These questions, moreover, show how flawed, from an administrative, logical, and practical standpoint, the dissent's and objectors' approach really is. No class would ever be certified because it would be impossible to demonstrate that every class member has a "colorable legal claim." (Dissenting Op. at 10.) More than this, it would gut commonality, for, most certainly, individual issues would then predominate. There would simply be no class that could meet this commonality and predominance test.

*Sullivan v. DB Invs., Inc*., 667 F.3d 273, 310 (3rd Cir. 2011).

85.     Some states' wage and hour or wage payment statutes may prescribe means other than class actions for pursuing common claims.  Any state restrictions on class actions are irrelevant, however, as this case was filed in federal court, where the Federal Rules of Civil Procedure hold. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 400, 130 S. Ct. 1431, 1438 (2010) (F.R.C.P. 23 authorizes "class actions across the board"

notwithstanding state law restrictions on class actions); *Dremak v. Iovate Health Scis. Grp., Inc. (In re Hydroxycut Mktg. & Sales Practices Litig.)*, 299 F.R.D. 648, 654 (S.D. Cal. 2014) ("[A]pplication of Rule 23 to Plaintiffs' [FBPA] claims does not run afoul of the Rules Enabling Act. Rule 23 governs Plaintiff's claims, and Plaintiff's claims are not subject to dismissal based on the state statutes prohibiting class actions."); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015) ("The bottom line is this. The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.").

86.     Due to Defendants' state law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## COUNT IV

## DISCRIMINATION AND RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
### (New York State Executive Law § 296 *et seq.*)

87.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

88.     The New York State Human Rights Law ("NYSHRL") provides: "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment." New York State Executive Law § 296(1)(a).

89.     The New York State Human Rights Law not only prohibits sex discrimination generally but also makes it "an unlawful discriminatory practice for an employer … to refuse to provide reasonable accommodations to the … pregnancy-related conditions … of an employee." N.Y. Exec. Law § 296(3)(a)-(b).

90.     Here, Plaintiff was discriminated, retaliated against and terminated because she was pregnant.

91.     Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff's protected rights under the NYSHRL.

92.     As a direct and proximate result of Defendants' unlawful acts in violation of NYSHRL, Plaintiff has suffered economic harm as well as severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and relief, including punitive damages and attorneys' fees.

93.     Due to Defendants' violations under the NYSHRL, Plaintiff is entitled to recover from Defendants: (1) back wages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## COUNT V

## DISCRIMINATION AND RETALIATION IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW

94.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

95.     The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment providing that:

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

The New York City Administrative Code § 8-107(1).

96.     At all relevant times, Defendants employed at least four (4) persons. Plaintiff was an employee and qualified person within the meaning of the NYCHRL and Defendants are the covered employer under the NYCHRL.

97.     Here, Plaintiff was discriminated, retaliated against and terminated because she was pregnant.

98.     Defendants operated a business that discriminated against Plaintiff on the basis of her pregnancy in violation of the NYCHRL. The New York City Human Rights Law makes it "an unlawful discriminatory practice" for any private employer to refuse a reasonable accommodation to an employee for "pregnancy, childbirth or related medical condition." N.Y.C. Admin. Code § 8-107(22)(a).

99.     Under the NYCHRL, an employer is liable for the discriminatory conduct by an employee, agent or independent contractor. The NYCHRL provides in relevant part:

> (a) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
> (b) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:
> > (1) the employee or agent exercised managerial or supervisory responsibility; or

(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

Administrative Code § 8-107(13)

100.     Here, the prerequisites haves been satisfied, since Defendants fired Plaintiff shortly after being aware of her pregnancy.

101.     Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff's protected rights under the NYCHRL.

102.     As a direct and proximate result of Defendants' unlawful acts in violation of NYCHRL, Plaintiff has suffered economic harm as well as severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and relief, including punitive damages and attorneys' fees.

103.     Due to Defendants' violation under the NYCHRL, Plaintiff is entitled to recover from Defendants: (1) back wages; (2) compensatory damages; (3) punitive damages; and (4) attorneys' fees and costs.

## COUNT VI

## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

104.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

105.    The FMLA states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S. Code § 2612(a)(1)(d).

106.    Section 2611(11) states in pertinent part: "the term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."

107.    Defendants' actions constitute a violation of Section 2614(c)(1) of the FMLA, which states: "Except as provided in paragraph (2), during any period that an eligible employee takes leave under section 2612 of this title, the employer shall maintain coverage under any "group health plan" (as defined in section 5000(b)(1) of title 26) for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave."

108.    Defendants are subject to the FMLA as a covered employer. Defendants are a covered employer because they employ 50 or more employees for each working day during each of the 10 or more calendar workweeks in the year preceding their violation of Plaintiff's rights under the FMLA.

109.    Plaintiff is an eligible employee under the FMLA because she had worked at least 1,250 hours in the 12 months preceding her request for leave. Plaintiff worked a minimum of 1,250 hours in the 12 months preceding her requested leave.

110.    Defendants willfully violated Plaintiff's rights under the FMLA by terminating her and by terminating her employment benefits including health insurance, group life insurance, and disability insurance.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, and state wage laws;

b.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, the NYCHRL, and the FMLA;

c.  An award of back pay, front pay, punitive damages, and compensatory damages due under the NYSHRL, the NYCHRL, and the FMLA;

d.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.  An award of unpaid regular and overtime compensation resulting from Defendants' policy of time-shaving, and which is due under the FLSA, NYLL, and state wage laws;

f.  An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay regular and overtime compensation pursuant to the FLSA, NYLL, and state wage laws;

h.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.  An award of statutory penalties, and prejudgment and post-judgment interest;

j.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k.  Designation of this action as a Class Action pursuant to FRCP 23;

l.  Designation of Plaintiff as Representative of the Class; and

m.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: March 5, 2024

Respectfully submitted,

By:   */s/ C.K. Lee*
C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs and the Class*

31