UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TAHARI MCCRAE, *on behalf of herself, FLSA Collective Plaintiffs, and the Class*,
Plaintiff,

-v-

OAK STREET HEALTH, INC., *et al.*,
Defendants.

24-CV-1670 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff Tahari McCrae brings this action against Defendants Oak Street Health Inc. and Oak Street Health MSO, asserting claims under the Fair Labor Standards Act, New York Labor Law, Family and Medical Leave Act, and New York State and City Human Rights Laws. Before the Court is Plaintiff's appeal from Magistrate Judge Katharine Parker's order granting Defendants' motion to compel arbitration. (ECF No. 48 ("Order").) For the reasons that follow, the Order is affirmed.

**I.     Background**

    The Court assumes familiarity with the facts and history of the case, and recounts here only information relevant to its review of Judge Parker's Order. McCrae was employed as a Medical Assistant by Defendants from February to November 2023. (Order at 1.) She alleges that she was not paid overtime as required, and was discriminated against on the basis of her pregnancy. (*Id.*) Upon being hired by Defendants, McCrae was provided an electronic copy of an Employment Agreement through Defendants' human resources platform, Workday. (*Id.* at 5-6; ECF No. 42 ("Fulurija Dec.") ¶ 6.) She was also provided a Confidentiality, Non-Competition and Non-Solicitation Agreement, which was attached to the Employment Agreement as "Exhibit A." (Order at 5.) McCrae reviewed the Employment Agreement and Exhibit A on Friday,

1

February 24, 2023[1] as "a single 8-page electronic document in [the electronic signature software] DocuSign." (*Id.* at 6.) There was only one place available for her to sign—the last page of the combined document—and she was unable to selectively reject any portions of the combined document. (*Id.* at 6.) McCrae electronically signed the document on the last page, which allowed her to complete the rest of her "new-hire tasks," including signing up for direct deposit and completing her Form I-9. (*Id.*; Fulurija Dec. ¶ 6.) After McCrae signed the combined document, a representative of Defendants counter-signed the document on February 27, 2023, the following business day. (Fulurija Dec. ¶ 13.) The same day, McCrae signed up for Direct Deposit through Workday. (*Id.*) The Employment Agreement contains a section regarding Alternative Dispute Resolution, which provides that disputes such as the one here "shall be resolved by arbitration in Illinois under the auspices of the American Arbitration Association." (*Id.* at 3.)

Defendants moved to compel arbitration on August 6, 2024 (ECF No. 33). McCrae opposed that motion on August 20, 2024 (ECF No. 36), and Defendants replied in support of their motion on September 3, 2024 (ECF No. 41.) After receiving supplemental briefing on a relevant choice-of-law issue (ECF Nos. 46, 47), Judge Parker granted Defendants' motion in its entirety (ECF No. 48.) Judge Parker reasoned that there was sufficient, unambiguous evidence that McCrae had in fact agreed to the arbitration provision in the contract (Order at 10-15), and

---

[1] It is not specified in the parties' filings whether this was McCrae's first day of employment. McCrae's complaint states that she was hired "[i]n or around February 20, 2023." (ECF No. 1 ¶ 30.) Defendants state that McCrae was provided access to the Employee Agreement on February 24, 2023, and that "[s]igning the Employment Agreement is the very first task that employees like Plaintiff must complete upon hiring." (Fulurija Dec. ¶ 6.) But Defendants also note that McCrae complained of being unable to access Workday one day prior, on February 23, 2023. (*Id.* ¶ 8.) In any event, while the Court cannot conclude that signing the Employment Agreement was McCrae's very first task, it is clear that she signed the Agreement as part of the onboarding process and did so before completing other new-hire tasks. (*Id.* ¶ 6.)

that McCrae's objections concerning a lack of consideration and the arbitration provision's unconscionability were issues to be decided in the first instance by the arbitrator (*id.* at 16-18). McCrae objected to Judge Parker's order on November 14, 2024 (ECF No. 49 ("Obj.")), arguing that McCrae never signed the arbitration provision, and that McCrae's arguments concerning a lack of consideration were issues to be decided by the Court rather than an arbitrator. Defendants opposed McCrae's objection on November 25, 2024. (ECF No. 50 ("Opp.").)

**II.     Legal Standard**

The prevailing view among district courts in this Circuit is that a motion to compel arbitration is non-dispositive, and therefore may be decided by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72(a), rather than requiring a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b). *See Chen-Oster v. Goldman, Sachs & Co.*, No. 10-CV-6950, 2021 WL 4199912, at *1 (S.D.N.Y. Sept. 15, 2021); *Cumming v. Indep. Health Ass'n, Inc.*, No. 13-CV-969, 2014 WL 3533460, at *1 (W.D.N.Y. July 16, 2014); *Alvarez v. Experian Info. Sols., Inc.*, No. 19-CV-3343, 2024 WL 3643269, at *6 (E.D.N.Y. Aug. 2, 2024); *Kumaran v. Vision Fin. Markets, LLC*, No. 20-CV-3871, 2022 WL 17540669, at *2 (S.D.N.Y. Dec. 6, 2022).[2]  While the Second Circuit has not yet addressed the issue, the only two circuits to weigh in—the First and Third—have agreed.  See *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x. 131, 134 (3d Cir. 2014) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein.  Instead, orders granting this type of motion merely suspend the litigation . . . . Given

---

[2] A limited number of cases have treated such motions as dispositive, but are older and did so without any substantive reasoning.  *See, e.g.*, *ECOR Sols., Inc. v. Malcolm Pirnie, Inc.*, No. 02-CV-1103, 2009 WL 2424553, at *5 (N.D.N.Y. Jan. 21, 2009), *report and recommendation adopted*, No. 02-CV-1103, 2009 WL 2424552 (N.D.N.Y. Aug. 5, 2009) (collecting cases).

this, we see no exercise of Article III power . . . ."); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010) ("Even if such a motion is granted, the court still retains authority to dissolve the stay or, after the arbitration has run its course, to make orders with respect to the arbitral award. . . . We acknowledge that the scope of judicial review of arbitral awards is very narrow, but that does not extinguish such review. Thus, there is no final exercise of Article III power at the time the court acts on the motion to stay.")  The Court agrees with this well-reasoned analysis, and therefore treats Plaintiff's challenges to Judge Parker's order as an interlocutory appeal rather than an objection to a report and recommendation.[3]

"[A] party may object to [a] magistrate judge's order" on a non-dispositive issue, in which case the district court, "shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (quoting Fed. R. Civ. P. 72(a)); *see also* 28 U.S.C. § 636(b)(1)(A).  "A magistrate [judge]'s ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 403 (S.D.N.Y. 2020) (quoting *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Dem. Rep.*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013)).  "Under this highly deferential standard, magistrate judges 'are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused.'" *Thai Lao Lignite*, 924 F.Supp.2d at 512 (quoting *Ritchie*

---

[3] The parties all appear to view Judge Parker's order as a report and recommendation. (*See* Obj. at 1; Opp. at 2.)  Their interpretation, however, does not control the standard of review that this Court applies.

*Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 78 (S.D.N.Y. 2012)).

**III.    Discussion**

The Court addresses each of McCrae's two objections and finds that Judge Parker neither committed clear error nor misapplied the law. However, even under the *de novo* standard of review, the Court agrees with Judge Parker's thorough and well-reasoned analysis.

   **A.    Plaintiff's Objection Concerning Her Signature**

McCrae first objects to Judge Parker's conclusion that McCrae intended to be bound by the Employee Agreement. (Order at 13-15.) According to McCrae, "it cannot be deemed that simply because Plaintiff signed a confidentiality agreement (separate and apart from an *unsigned* Employment Agreement) that she also agreed to be a party to the Employment Agreement." (Obj. at 7.)

The Court determines that Judge Parker's conclusion is correct. McCrae was provided the Employment Agreement and Exhibit A together as one document through the electronic signature platform DocuSign. McCrae does not dispute that she was provided only one place to sign the combined document and was given no opportunity to object to any portion of that document. McCrae also does not dispute that signing the Employee Agreement was an explicit condition of her employment, and that she was only allowed to complete other necessary onboarding tasks—including setting up a method to receive payment—once she had signed it. These are all strong indicia that McCrae intended to sign *both* the Employment Agreement and Exhibit A when she electronically affixed her signature at the end of the combined document.

McCrae's best argument to the contrary is that the Employment Agreement and Exhibit A contain separate signature blocks and that, when McCrae signed the combined document through DocuSign, her signature was only printed in the signature block for Exhibit A. (Obj. at

5

8.) While McCrae's DocuSign signature appears only in the second signature block, Defendants' signature appears in both blocks. (ECF 33-2 at 7-8, 10-11.) Nonetheless, the Court is not persuaded by McCrae's argument. First, McCrae did not even need to sign the Employment Agreement to be bound—merely continuing one's employment after receiving notice of the arbitration provision can be enough to manifest assent. *See Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order); *see also Weiss v. Macy's Retail Holdings, Inc.*, 741 F. App'x 24, 27 (2d Cir. 2018) (summary order) (same); *cf. Alvarez v. Coca-Cola Refreshments, USA, Inc.*, 914 F. Supp. 2d 256, 258 (E.D.N.Y. 2012) (requiring that an employee must have "read or at least received" an unsigned arbitration agreement for it to be enforceable). Here, McCrae's engagement with the combined DocuSign document is at least sufficient to demonstrate that she had notice of the Employment Agreement. Second, the fact that there was only one place available for her to sign and the lack of a page break or other visual differentiation between the documents (*see* ECF No. 33-2 at 7-8) support Judge Parker's conclusion that McCrae intended to sign both documents when she affixed her signature using DocuSign.[4] Third, even if McCrae were correct that she only intended to sign Exhibit A, that document incorporates the Employment Agreement by reference in Sections A(1)(d) and C(7), which both state: "Employee acknowledges and agrees that, pursuant to the Employment Agreement, dated as of the date hereof . . . Employee has received good and valuable consideration including, but not limited to, benefits set forth in Paragraph 3 of the Employment

---

[4] The Employment Agreement is separately signed by Defendants' representative, Nikita Moore (ECF No. 33-2 at 7-8), but only Moore's signature at the end of Exhibit A is properly dated (*id.* at 10-11). While neither party explains this discrepancy, the most parsimonious explanation is that Moore's first signature was mistakenly left over on the printed document when it was uploaded to DocuSign. Based on the printed dates, only McCrae's signature and Moore's second signature appear to have been affixed through DocuSign in February 2023.

Agreement, employment, and benefits and compensation set forth in Employee's offer letter . . . ." (Order at 13; ECF No. 33-2 at 8-9.) The Court thus finds no reason to disagree—and fully agrees—with Judge Parker's conclusion that McCrae both expressly and effectively assented to the arbitration provision. (Order at 14-15.)

### B. Plaintiff's Objection Regarding Consideration

McCrae next objects to Judge Parker's conclusion that her argument regarding a lack of consideration "must be decided by the arbitrator because [it] concern[s] [the contract's] enforceability." (Order at 18.) According to McCrae, consideration is an element of contract formation, rather than a question of enforceability, and must therefore be decided in the first instance by the Court. (Obj. at 6.)

While it is true that a lack of consideration supporting a disputed arbitration provision is a matter of formation for the Court to decide, *see Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 252 (2d Cir. 2019) (applying Connecticut and Colorado law), that is not the situation here. Here, McCrae argues that the arbitration provision is illusory because Defendants could breach their promise to arbitrate by refusing to pay their share of the fees, and McCrae would have no remedy other than fronting those fees herself. (ECF No. 36 at 16-17.) Because McCrae and her coworkers are "low wage workers," they allegedly would be unable to front such costs, rendering them unable to enforce Defendants' promise to arbitrate, should Defendants choose to renege. (*Id.* at 17.)

The Court agrees with Judge Parker that this argument concerns enforceability rather than formation, regardless of whether it is styled in the language of "consideration." Most obviously, that is because arbitration contracts can be validly formed even if one party's promise to arbitrate is illusory. Applying the FAA, the Second Circuit has "rejected the contention that . . . 'an arbitration clause is an independent contract that is separable from the main contract in which it

is found and therefore must have all of the essential elements of a contract, including consideration." *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 453 (2d Cir. 1995) (quoting *Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir.1989)). "A doctrine that required separate consideration for arbitration clauses might risk running afoul of" the "strong federal policy favoring arbitration." *Id.*; *see also Lefkowitz v. Reissman*, No. 12-CV-8703, 2014 WL 925410, at *9 (S.D.N.Y. Mar. 7, 2014) (same). Here, signing the Employment Agreement allowed McCrae to begin working, and to receive her wages and benefits. (Fulurija Dec. ¶ 6; ECF No. 33-2 at 4.) The overall contract was thus clearly supported by consideration, even if it did not feature perfect parity between the parties' mutual promises to arbitrate in the event of a dispute. *See Gilbert v. Dell Techs., Inc.*, 415 F. Supp. 3d 389, 395 (S.D.N.Y. 2019) ("The plaintiff's . . . employment as an at-will employee constituted sufficient consideration for the agreement to be valid."); *Metzler v. Harris Corp.*, No. 00-CV-5847, 2001 WL 194911, at *5 (S.D.N.Y. Feb. 26, 2001) ("[I]t is now the law in New York that a court will compel arbitration even where an at-will employee was given no additional consideration for the insertion of an arbitration clause in his contract."); *see also Alemayehu*, 934 F.3d at 252 ("A fundamental tenet of the law of consideration is that 'consideration may consist of a performance or of a return promise,' and that, except in certain circumstances not relevant here, 'any performance which is bargained for is consideration.'" (quoting Restatement (Second) of Contracts §§ 71 cmt. D, 72)). McCrae cites no New York or Illinois case law to the contrary. (*Cf.* ECF No. 36 at 19-20 (citing cases applying Missouri, New Mexico, and Indiana law).)

   Rather than pertaining to consideration in the sense of contract formation, McCrae's arguments are better understood as alleging a species of unconscionability. *See, e.g.*, *Am. Fam. Life Assurance Co. of New York v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) (summary order)

(interpreting a similar claim as one pertaining to unconscionability); *see also Yost v. Everyrealm, Inc.*, No. 22-CV-6549, 2023 WL 2859160, at *9 (S.D.N.Y. Apr. 10, 2023) (same).  The primary case on which McCrae relies supports this interpretation.  There, the Court of Appeals permitted an employee to challenge an arbitration agreement based on its cost-sharing provision, but did so as a matter of public policy, not contract-formation doctrine.  *Brady v. Williams Capital Grp., L.P.*, 14 N.Y.3d 459, 466 (2010).  Thus, because McCrae's dispute concerns enforceability rather than consideration, Judge Parker was correct to refer it to arbitration for resolution in the first instance.

In so holding, the Court is mindful not to give the impression that it is ruling on the substance of McCrae's unconscionability challenge, only that the bar for alleging adequate consideration is a low one that is met here.  *Cf. Dou v. TD Bank N.A.*, No. 23-CV-4880, 2024 WL 4252500, at *8 n.5 (S.D.N.Y. Sept. 20, 2024).

**IV.    Conclusion**

For the foregoing reasons, McCrae's objections are OVERRULED and Judge Parker's Order compelling arbitration (ECF No. 48) is AFFIRMED.  This case will remain stayed pending arbitration.  The Clerk of Court is directed to terminate the motion at ECF No. 34, which is denied as moot.

SO ORDERED.

Dated: February 6, 2025
       New York, New York

                                                          _____
                                                          J. PAUL OETKEN
                                                          United States District Judge

9